# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZEBRA TECHNOLOGIES CORPORATION, ZEBRA TECHNOLOGIES INTERNATIONAL, LLC, LASER BAND LLC, and ZIH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> TYPENEX MEDICAL, LLC, and WARD KRAFT INC., <br><br> Defendants. | No. 18 C 4711 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Zebra Technologies Corporation, Zebra Technologies International, LLC, Laser Band LLC ("Laser Band"), and ZIH Corp. (collectively, "Zebra") filed this lawsuit against Defendants Typenex Medical, LLC ("Typenex") and Ward Kraft Inc. ("Ward Kraft") for patent and trademark infringement, unfair competition, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat 510/1 *et seq.*, based on Ward Kraft's manufacture and Typenex's distribution of certain patient identification wristbands. Typenex and Ward Kraft move to stay this case pending resolution of a case Ward Kraft filed in the Eastern District of Missouri against Zebra, which seeks a determination concerning the applicability of a covenant not to sue between Ward Kraft and Laser Band to the claims asserted in this case. *See Ward-Kraft, Inc. v. Zebra Techs. Corp.*, No. 4:18-cv-1725 (E.D. Mo.) (the "Missouri action").[1] Because a stay would not unduly prejudice Zebra, would simplify the issues, and would reduce

---

[1] Zebra has filed a mirror motion to dismiss or stay in the Missouri action, which is not yet fully briefed. *See* Missouri action, Doc. 22.

the litigation burden on the parties and the Court, the Court stays this case pending the resolution of the Missouri action.

## BACKGROUND

In the late 1990s, Ward Kraft entered into an agreement with Riley, Barnard & O'Connell Business Products Inc. ("RBO") to develop and manufacture certain self-laminating patient identification wristband forms (the "LB1" products). Jim Riley owned both RBO and Laser Band. In 1999, the Standard Register Company ("Standard Register"), RBO, and Ward Kraft were parties to litigation concerning the LB1 products. In 2000, these parties entered into an agreement to end the litigation. As part of that agreement, Laser Band and Ward Kraft executed a License Agreement, effective August 11, 2000. In the Licensing Agreement, Laser Band granted Ward Kraft a non-exclusive license to:

> make, have made for it, use, offer to sell, sell and import forms of the type previously identified by Laser Band as PLS-102 and PLS-102W and other forms having both labels and a Wristband, the wristband being formed from a portion of the face ply and a portion of the liner ply, with the liner ply having a pair of integrally formed tabs for fastening the wristband and with a substantial portion of the face ply in the completed wristband being laminated on both sides by the portion of the liner ply (Combo Form(s)).

Doc. 33-1 at 2. Laser Band granted this license under certain patents it owned (the "Riley Patents"). Ward Kraft also received a non-exclusive sub-license under one of Standard Register's patents (the "Standard Patent") to "make, have made for it, use, offer to sell, sell and import Combo Forms." *Id.* In exchange for these licenses, Ward Kraft agreed to pay Laser Band a royalty for Licensed Products, defined as "Combo Forms covered by any of the Riley Patents or the Standard Patent," that Ward Kraft made, sold, or imported. *Id.*

The License Agreement includes a mutual covenant not to sue:

2

> Ward Kraft hereby grants to . . . Laser Band . . . , and Laser Band hereby grants to Ward Kraft, a covenant not to sue under any intellectual property or other right in connection with the making, using, offering for sale, sale and importing of the Combo form.

*Id.* at 5. The covenant not to sue does not apply to Wristband-Only forms ("those forms which include one or more wristbands . . . without labels"), and additionally, Laser Band retained the right to enforce any rights upon breach of the license. *Id.* at 4–5. The License Agreement "inure[s] to the benefit of the parties hereto, the successors and assigns, but may not be assigned by either party without the express written consent of the other, except to a successor of substantially all of the business of the party." *Id.* at 5. Missouri substantive law governs, and a forum selection clause provides that "any action by any party to enforce any provision of this Agreement shall be brought exclusively in the United States District Court for the Eastern District of Missouri, Eastern Division." *Id.* at 5. Although the agreement has an expiration date tied to the expiration of the last of the Riley or Standard Patents, it also provides that certain provisions survive that expiration, including the covenant not to sue, the assignment provision, and the forum selection clause.

The Zebra entities acquired Laser Band, including its trademarks, trade dress rights, and goodwill, in 2012. Zebra filed this case on July 9, 2018. Laser Band owns the eight patents at issue in this case and alleges that Typenex infringes on these patents with respect to two wristbands it sells, the Helix AC Laser L2 and Helix AC Laser L3.[2] Zebra also claims that these and other wristband forms that Ward Kraft manufactures and Typenex sells infringe on Zebra's trademarks and trade dress. Finally, Zebra claims Ward Kraft has made misleading representations of fact with respect to Laser Band products and trademarks. After Ward Kraft

---

[2] Zebra does not bring any patent claims directly against Ward Kraft.

3

answered the complaint,[3] and the Court entered a scheduling order, Ward Kraft filed the Missouri action on October 9, 2018.

## ANALYSIS

"A district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (citation omitted). Although the general rule counsels deference to the first-filed action, the Seventh Circuit does not rigidly follow this rule. *Nicholson v. Nationstar Mortg. LLC of Del.*, No. 17-cv-1373, 2018 WL 3344408, at *4 (N.D. Ill. July 6, 2018); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980–82 (7th Cir. 2010) (collecting cases). Indeed, because "[n]o mechanical rule governs the handling of overlapping cases . . . the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999). In deciding whether to stay this case, the Court considers whether a stay will (1) unduly prejudice or disadvantage Zebra, (2) simplify the issues and streamline the case, and (3) reduce the burden of litigation on the parties and the Court. *Nicholson*, 2018 WL 3344408, at *4.

Typenex and Ward Kraft argue that the wristband forms of which Zebra complains in this action qualify as "Combo Forms" under the License Agreement, subjecting all of Zebra's claims to that agreement's covenant not to sue. In addition to raising this as an affirmative defense to Zebra's complaint, Ward Kraft filed the Missouri action, in which it claims that Zebra breached the covenant not to sue and seeks a declaratory judgment that the claims in this case fall within the scope of the covenant. Typenex and Ward Kraft seek a stay of this case while the court in

---

[3] Typenex and Ward Kraft both asserted the covenant not to sue as an affirmative defense in their answers. Typenex also filed counterclaims against Zebra.

the Missouri action determines the applicability of the covenant not to sue to the claims here. Typenex and Ward Kraft claim the License Agreement's forum selection clause requires this dispute to be decided by the Eastern District of Missouri. Zebra, on the other hand, opposes a stay, arguing that the covenant not to sue does not apply to the products at issue in this case and that, to the extent it does apply, the covenant not to sue covers only Laser Band and not the other Zebra. Zebra essentially asks the Court to consider the underlying merits of the Missouri action. The Court does not delve into this merits argument, however, and instead considers only whether a stay will unduly prejudice Zebra, simplify the issues, and reduce the burdens on the parties and the Court.

Considering these factors, the Court finds that, on the whole, they favor deferring adjudication of this suit in favor of the Missouri action. First, staying this case would not unduly prejudice or disadvantage Zebra. Zebra argues that, to the extent the covenant not to sue applies here, it does not apply to all the Zebra entities but only to Laser Band. Therefore, Zebra contends that a stay here would delay resolution of the claims not involving Laser Band, but this argument requires the Court to first accept Zebra's reading of the covenant. Even if the covenant does not cover some of Zebra's claims, delay in resolving those claims alone does not establish undue prejudice. *See Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 877 (N.D. Ill. 2016) ("[T]he potential for delay 'does not, by itself, establish *undue* prejudice[.]'" (citation omitted)). And while Zebra claims that Typenex and Ward Kraft's infringement continues, Zebra has not sought a preliminary injunction to enjoin Typenex and Ward Kraft from producing or selling the alleged infringing products. *Id.* at 878 (collecting cases finding that the decision not to pursue a preliminary injunction belies a claim of undue prejudice). Zebra also appears to have delayed in bringing this lawsuit, having been made aware of Ward Kraft's

intention to continue producing the products at issue almost two years before filing suit, which again undermines any claimed harm from continuing infringement. Moreover, if Zebra prevails on its claims, Zebra may collect monetary damages for any infringement that occurs while the case is stayed. *See j2 Global, Inc. v. Integrated Global Concepts, Inc.*, No. C-12-02971-RMW, 2013 WL 5688599, at *2 (N.D. Cal. Oct. 18, 2013) (no showing of irreparable harm arising from stay where plaintiff could recover damages if it ultimately succeeded on the merits).

A stay also may simplify the issues in this case and streamline its resolution. Determining whether Zebra may proceed on its claims against Typenex and Ward Kraft in light of the covenant not to sue amounts to a threshold issue that a court must be resolve before addressing the merits of Zebra's claims. Per the License Agreement's forum selection clause, resolution of that issue must take place in the Eastern District of Missouri.[4] Waiting until the Eastern District of Missouri resolves whether the covenant not to sue applies to Zebra's claims here could significantly narrow the issues before this Court or even resolve the case completely. *See DeSimone v. Danaher Corp.*, No. 17-cv-5232, 2018 WL 4181483, at *11 (N.D. Ill. Aug. 13, 2018) (granting stay of deadlines until resolution of the threshold issue of whether parties should be litigating the case at all). This remains true even if the court in the Missouri action determines that the covenant not to sue applies only to Laser Band, and not the remaining Zebra entities,

---

[4] Zebra does not argue that the forum selection clause is invalid but instead contends that this Court can consider the applicability of the covenant not to sue despite the forum selection clause because doing so would not involve enforcement of the License Agreement. Zebra focuses on the forum selection clause's language that "any action by any party to *enforce* any provision of this Agreement shall be brought exclusively in" the Eastern District of Missouri, while the choice of law language provides that the agreement "shall be construed, interpreted, and applied" in accordance with Missouri law. Doc. 33-1 at 5 (emphasis added). Zebra claims that the Court would not be enforcing the covenant in addressing it as an affirmative defense to suit, avoiding any issues with the agreement's requirements as long as it applied Missouri law to its determination of the applicability of the covenant to Zebra's claims. This creative argument has no merit. Zebra does not cite any caselaw supporting such a reading of the forum selection clause. Further, in raising the covenant not to sue as an affirmative defense in this case, Typenex and Ward Kraft ask the Court to enforce it against Zebra. Even using Zebra's logic, this enforcement question must be decided in the Eastern District of Missouri.

particularly where Laser Band holds the patents Typenex allegedly infringed in this case. *See Nicholson*, 2018 WL 3344408, at *9 (finding that even where the parallel proceeding would only resolve some of the issues in case before it, that parallel proceeding would still streamline the issue before the court).

Finally, a stay will reduce the burden of litigation on both the parties and the Court. A stay of this case allows for resolution of the threshold issue in the proper forum and, to the extent the Missouri court finds that the covenant applies to even some parts of Zebra's claims, narrows the discovery and motion practice here. Zebra brings a twelve-count complaint, with 199 asserted patent claims. Zebra set forth its initial infringement contentions for those patent claims in a 182-page document, providing an initial glimpse into the many issues to be explored in discovery. Based on the currently asserted claims, this case will require expansive discovery that could contract significantly if the covenant not to sue applies to even a portion of the case. *See j2 Global, Inc.*, 2013 WL 5688599, at *2 (noting that a stay to resolve the applicability of a covenant not to sue to patent claims could prevent the defendant from "needlessly go[ing] through the expense of discovery and defending against [plaintiff's] claims).

The Court therefore finds a stay of this case appropriate pending resolution of the Missouri action. Because the License Agreement's forum selection clause requires resolution of the covenant not to sue's applicability in the Eastern District of Missouri, the first-filed rule does not warrant a different outcome. *See Research Automation, Inc.*, 626 F.3d at 980 (noting that determining which case should proceed should not involve a "mechanical" application of the first-filed rule). And the fact that Zebra has filed some claims solely against Typenex also does not warrant proceeding on those claims before resolution of the applicability of the covenant not to sue, where these patent claims are essentially brought against Ward Kraft, the manufacturer of

7

the accused infringing products. *Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *4 (N.D. Ill. Dec. 13, 2013) ("[A] manufacturer is the true defendant in a patent infringement action because 'it is a simple fact of life that a manufacturer must protect its customers[.]'" (citation omitted)). The customer suit exception provides that a later case filed by a manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011). The Missouri action, filed by Ward Kraft against Zebra, has the potential to do so here. Therefore, the Court stays this case until the resolution of the Missouri action.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to stay the proceedings pending resolution of parallel litigation [33]. The Court stays this case pending resolution of *Ward-Kraft, Inc. v. Zebra Technologies Corporation*, No. 4:18-cv-1725 (E.D. Mo.).

Dated: December 13, 2018

_____
SARA L. ELLIS
United States District Judge